UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVE B.,<br><br>            Plaintiff,<br><br>        v.<br><br>ANDREW M. SAUL, Commissioner of<br>Social Security Administration,<br><br>           Defendant. | Case No.  CV 18-3177-SP<br><br><br>MEMORANDUM OPINION AND<br>ORDER |

**I.**

**INTRODUCTION**

On April 16, 2018, plaintiff Dave B., proceeding pro se, filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB").  The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents what the court interprets as six disputed issues for

decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the medical opinions; (2) whether the ALJ properly considered plaintiff's subjective complaints; (3) whether the ALJ erred at step three; (4) whether the ALJ erred at step five; (5) whether the ALJ fully developed the record; and (6) whether the ALJ properly considered lay testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-9[1]; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-15.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered most of the medical opinions, properly considered plaintiff's testimony, did not err at steps three and five, and properly considered the lay opinion. But the court also concludes that the ALJ failed to properly consider the State Agency physicians' opinions concerning plaintiff's physical limitations, and failed to fully develop the record in that regard. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 43 years old on his alleged disability onset date and is a college graduate. AR at 75, 222. Plaintiff has past relevant work as an actor and waiter. *Id*. at 63.

On September 29, 2015, plaintiff filed an application for a period of disability and DIB due to post-traumatic stress syndrome ("PTSD"), protruding discs, muscle spasms in the back, sciatica, depression, anxiety, and insomnia. *Id*. at 75. The application was denied initially and upon reconsideration, after which

---

[1] All citations to the Memorandum in Support of Plaintiff's Complaint refer to the page numbers designated by the CM/ECF system.

plaintiff filed a request for a hearing. *Id.* at 113-24.

On April 28, 2017, plaintiff, then represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 41-74. The ALJ also heard testimony from June Hagen, a vocational expert. *Id.* at 62-72. On September 14, 2017, the ALJ denied plaintiff's claim for benefits. *Id.* at 22-34.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since March 28, 2014, the alleged onset date. *Id.* at 24.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, osteoporosis, and PTSD. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 25.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined plaintiff had the RFC to perform light work[3], with the limitations that

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10. "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some

3

plaintiff: could perform occasional postural movements; could not climb ladders, ropes, or scaffolds; could not work around unprotected heights or moving mechanical parts; must change from sitting to standing every 30 minutes for one to two minutes; and was limited to simple, routine tasks with occasional public contact. *Id*. at 26.

The ALJ found, at step four, that plaintiff was incapable of performing his past relevant work as an actor or waiter. *Id*. at 31-32

At step five, the ALJ found that given plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including marker, housekeeping cleaner, table worker, addresser, and stuffer. *Id*. at 32-33. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 33-34.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 4-6. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may

deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

4

reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. This Court Will Not Consider the Extra-Record Evidence

In support of his complaint, plaintiff submitted new evidence that is not a part of the Administrative Record and, as such, was not reviewed by the ALJ or Appeals Council. Extra-record evidence is not judicially reviewable. *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988). This court, therefore, may not consider this extra-record evidence.

Although a court may remand a case for the consideration of new evidence submitted if the claimant demonstrates the new evidence is material and there was

good cause for failing to include it in the record previously, plaintiff has not argued either. *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990). Because this court is remanding this case for further proceedings on other grounds, however, the ALJ should consider the extra-record evidence on remand.

**B.**    **The ALJ Failed to Properly Consider All of the Medical Opinions**

Plaintiff argues the ALJ failed to properly consider the medical opinions. P. Mem. at 2, 4-6. Specifically, plaintiff contends the ALJ failed to provide specific and legitimate reasons for discounting the opinions of several treating and examining physicians. *Id*. Further, plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because the state agency physicians' opinions did not constitute substantial evidence. *Id*. at 5-6.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[4] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

"[T]he ALJ may only reject a treating or examining physician's

---

[4]    All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

uncontradicted medical opinion based on 'clear and convincing reasons.'"
*Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (*citing Lester*, 81 F.3d at 830-31). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (quoting *Lester*, 81 F.3d at 830-31). The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Lester*, 81 F.3d at 831.

### 1. Treating Physicians

#### a. Dr. Marvin Osman

Dr. Marvin Osman, a psychiatrist, treated plaintiff from around January 6, 2015 through at least April 20, 2017. AR at 351, 861-66. The record only contains Dr. Osman's treatment notes from 2015. *See* AR at 350-51. During nine sessions in 2015, plaintiff reported to Dr. Osman that he suffered from anxiety and insomnia, as well as angered easily, as a result of an attack by a pit bull in 2013. *See id*. at 350-51. Dr. Osman treated plaintiff with multiple psychotropic medications. *See id*. at 350-51, 860.

Dr. Osman submitted three letters to the Commissioner in support of plaintiff's application for benefits. *Id*. at 343, 695-96, 860. In the January 12, 2015 letter, Dr. Osman opined the pitbull attack and subsequent surgeries impacted plaintiff's mental capacity, causing him to suffer from PTSD, depression, and anxiety. *Id*. at 343. In the March 15, 2016 letter, Dr. Osman restated his diagnoses and explained plaintiff's panic attacks and anxiety rendered him unable to think or function clearly, causing him to freeze, hyperventilate, and cry uncontrollably in public. *See id*. at 695-96. In the March, 29, 2017 letter, Dr. Osman stated plaintiff was a "social isolate" and withdrawn from life. *Id*. at 860.

Dr. Osman also submitted a Mental Impairment Questionnaire, dated May 27, 2016, in which he opined plaintiff, in most categories, had no useful ability and

aptitude to do unskilled work. *Id*. at 707-12. Dr. Osman further opined plaintiff had marked limitations with his ability to perform activities of daily living, had extreme limitations in maintaining social functioning, concentration, persistence of pace; and would have four or episodes of decompensation within a twelve-month period.[5] *Id*. at 711.

### b. Dr. Mohamed Ziyad Kattih

Dr. Mohamed Z. Kattih, a physiatrist, treated plaintiff from approximately May 2015 through at least April 2017. *See id*. at 751-52, 834-35. Dr. Kattih observed plaintiff had, among other things, tenderness, restricted side bending, an antalgic gait, full motor strength, and a positive single leg raise on the left. *See, e.g., id*. at 729, 731, 735, 844. During the March 21, 2017 examination, Dr. Kattih noted plaintiff ambulated with a cane. *Id*. at 836. Dr. Kattih treated plaintiff with epidurals on four occasions from July 2015 through March 2016, physical therapy, and narcotic medication. *See id*. at 755-58, 866-917. In addition to the physical examinations, Dr. Kattih noted plaintiff was alert, oriented, and had reasonable judgment. *See, e.g., id*. 729, 733, 735. Plaintiff also reported that he was socially active. *See, e.g., id*. at 842, 844, 846.

In a Los Angeles County Department of Social Services Physical Health Assessment for General Relief form signed April 12, 2017, Dr. Kattih opined plaintiff suffered from a psychiatric problem that may prevent work, had a presumptive disability, and had a medical condition that prevented plaintiff from one or more of the following: frequent sitting, fingering, and handling; occasional standing and walking, lifting 10 pounds, bending, and reaching; or demonstrating

---

[5] The record also contains four out of five pages of a Short-Form Evaluation for Mental Disorders. AR at 691-94. Although the handwriting appears to match Dr. Osman's handwriting, the last page, which presumably is the signature page, is missing. The ALJ afforded little weight to this opinion because it was unsigned and inconsistent with the mental status examinations. *See id*. at 31.

grossly normal cognitive ability. *Id*. at 834-35. In each instance, Dr. Kattih did not specify which condition or limitation plaintiff had. *See id.*

### c. Primary Care Physicians

Primary care physicians at Saban Community Clinic ("Saban") treated plaintiff from approximately September 2014 through at least October 2016. *See id.* at 546, 760. Plaintiff was underweight throughout this period, with his weight ranging from 113 pounds and a BMI of 17.19 to 124 pounds and a BMI of 18.3. *See id*. at 536, 762. The Saban physicians observed, among other things, plaintiff had tenderness to the touch in his lumbar spine and decreased range of motion. *See id.* at 538, 663, 666. The Saban physicians observed a normal gait during some examinations and an antalgic gait at others. *See, e.g, id*. at 539, 785, 812. During the examinations, plaintiff was oriented and had a normal mood and affect. *See, e.g., id*. at 376, 387, 408.

### 2. Examining Physicians

### a. Dr. Oswald Chan

Dr. Oswald Chan, a Saban family medicine practitioner, examined plaintiff on May 8, 2015. *Id*. at 536-37. Plaintiff requested eight weeks of disability due to back pain he experienced after a fall in March 2015. *See id*. at 536. Dr. Chan observed plaintiff had mild tenderness to palpation in the back, was ambulating without difficulty, had a normal gait, and had a negative single leg raise test. *See id*. at 537. Dr. Chan diagnosed plaintiff with bilateral low back pain without sciatica. *See id*. When plaintiff demanded to be put on disability, Dr. Chan stated he felt plaintiff could work, but he would refer him to a physiatrist for further assessment instead. *See id*.

### b. Dr. Todd D. Moldawer

Dr. Todd D. Moldawer, an orthopedic surgeon, examined plaintiff on January 5, 2016 and August 11, 2016. *Id*. at 685-89, 723-24. At the first

examination, plaintiff told Dr. Moldawer that he injured his back in March 2015 when he panicked after seeing a pit bull and went down to the ground.[6] *Id*. at 685. As a result, plaintiff wore a back brace and sometimes used a cane or walker. *Id*. Dr. Moldawer observed plaintiff was oriented and alert with appropriate judgment, and had a normal gait, decreased range of motion in the spine, a positive straight leg raise test, tenderness, and a positive Gaenslen's test. *See id*. at 687-88. Based on the examination, an MRI, and x-rays, Dr. Moldawer diagnosed plaintiff with a herniated disc at L5-S1 with an extruded disc fragment, multiple levels of degenerative disc disease, a central annular tear with left foraminal narrowing at two levels, broad-based disc bulge, and osteoporosis. *Id*. at 688. Dr. Moldawer recommended electroneurodiagnostic testing. *Id*.

At his second examination, Dr. Moldawer observed plaintiff walking without a limp but using a cane. *Id*. at 723. Dr. Moldawer observed plaintiff had decreased range of motion, weakness in the lower extremities, positive straight leg raise test on the left, and some tenderness. *Id*. Based on the examination and a review of Dr. Yaser Badr's neurosurgical consultation, Dr. Moldawer recommended a microdiscectomy at L5-S1 on the left. *Id*.

### c. **Dr. Yaser Badr**

Dr. Yaser Badr, a neurosurgeon, examined plaintiff on June 29, 2016. *Id*. at 717-20. Dr. Badr observed plaintiff had a limping gait but full strength in his extremities. *Id*. at 720. Dr. Badr also observed plaintiff had clear speech and no mental deficits. *Id*. at 719. Based on his examination and review of the imaging, Dr. Badr diagnosed plaintiff with lumbar degenerative disc disease and recommended lumbar decompression and fixation. *Id*. at 720.

---

[6] Emergency room treatment notes from March 25, 2015, indicate plaintiff hurt his back in the shower. *See* AR at 358, 361.

### 3. State Agency Physicians

Four State Agency physicians reviewed plaintiff's medical records through 2015. *Id.* at 80-83, 100-02. Based on their review, Dr. S.M. Niknia and Dr. Leslie Arnold, a pediatrician, opined plaintiff had the physical RFC to lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally, stand and walk six hours in an eight-hour work day, and sit six hours in an eight-hour work day. *Id.* at 85-86, 105-06.

Dr. N. Haroun and Dr. Preston Davis, who also reviewed Dr. Osman's opinion dated January 29, 2016,[7] opined plaintiff suffered from anxiety-related disorders and: had mild restrictions in activities of daily living; had moderate limitations in social functioning, had mild limitations in maintaining concentration, persistence, or pace; and would not have repeated episodes of decompensation. *Id.* at 83-84, 102-03. Dr. Haroun and Dr. Davis opined plaintiff had the mental RFC to perform simple, repetitive tasks; maintain attention in two-hour increments; accept instructions and respond appropriately to supervisors; and respond appropriately to changes in work setting; but was moderately limited in his ability to interact with the general public. *Id.* at 84, 86-87, 104, 106-08. In reaching their opinion, Dr. Haroun and Dr. Davis discounted Dr. Osman's opinion because it relied heavily on subjective evidence and was not supported by the objective evidence. *See id.* at 88, 109.

### 4. The ALJ's Findings

The ALJ determined plaintiff had the physical RFC to perform light work with some postural limitations and the requirement that he must be able to change from sitting to standing every 30 minutes for one to two minutes. *Id.* at 26. The ALJ restricted plaintiff from climbing ladders, ropes, or scaffolds, and working

---

[7] The record does not include an opinion dated January 29, 2016 from Dr. Osman.

around unprotected heights or moving mechanical parts.  *Id*.  As for the mental RFC, the ALJ limited plaintiff to simple, routine tasks with occasional public contact.  *Id*.  In reaching this RFC determination, the ALJ gave significant weight to the opinions of the State Agency physicians and little to no weight to the opinions of Dr. Osman and Dr. Kattih.  *Id*. at 30.

### a.    Opinions Regarding Plaintiff's Mental RFC

The ALJ properly considered and discounted Dr. Osman's opinions, and properly considered and credited Dr. Haroun's and Dr. Davis's opinions, which served as substantial evidence to support the ALJ's Mental RFC determination.

The ALJ provided four reasons to discount Dr. Osman's opinions:  (1) the first letter opinion was written after only one visit; (2) the letters contain inconsistencies with the record; (3) the opinions relied on plaintiff's subjective complaints; and (4) they were not supported by the medical record and clinical findings.  *Id*. at 29-30.  Some of these reasons were specific and legitimate.

The ALJ's first reason for rejecting Dr. Osman's first letter opinion was not specific and legitimate.  When Dr. Osman offered his first letter opinion, he had already examined plaintiff.  The regulations clearly state that an ALJ must consider the opinions of examining physicians.  *See* 20 C.F.R. § 404.1527(c).  The fact that Dr. Osman rendered an opinion after only one examination may be a factor in assigning weight but it is not specific and legitimate reason to reject it.

The ALJ's second and third reasons for giving Dr. Osman's opinions no weight – they contained inconsistencies with the record and were based on plaintiff's subjective complaints – were related because both concern plaintiff's credibility.  AR at 29-30.  An ALJ may reject medical opinions based on a claimant's subjective complaints where his credibility has been properly discounted.  *Schultz v. Astrue*, 362 Fed. Appx. 634, 636 (9th Cir. 2010); *Tonapetyan*, 242 F.3d at 1149; *see also Smolen*, 80 F.3d at 1284 (ALJ may

12

consider prior inconsistent statements in credibility analysis). Regarding inconsistencies with the record, the ALJ cited three inconsistencies: (1) plaintiff testified he saw Dr. Osman frequently but the record contains limited treatment notes; (2) Dr. Osman wrote plaintiff reported having over 20 procedures for his face but the record reflects only one[8]; and (3) plaintiff told Dr. Osman he injured his back when he fell after seeing a pit bull but emergency room records reflect he hurt his back in the shower. *See* AR at 30. The record supports the latter two findings of inconsistencies. *Compare id*. at 50, 343, 685 and *id*. at 332-33, 358. Regarding plaintiff's psychiatric treatment, although the record only contains treatments from 2015, Dr. Osman corroborates plaintiff's testimony about the frequency of his treatment. *See id*. at 53, 350-51, 861. As for Dr. Osman's reliance on plaintiff's subjective complaints, the ALJ correctly observed Dr. Osman's treatment notes do not contain any objective findings and his opinions appeared to be wholly based on plaintiff's subjective complaints. *See id*. at 350-51. As discussed below, the credibility of plaintiff's testimony was properly discounted, at least in part. Accordingly, substantial evidence supports the ALJ's rejection of Dr. Osman's opinions on the basis that they were based on plaintiff's unreliable subjective complaints.

The ALJ's fourth reason for rejecting Dr. Osman's opinions was because they were not supported by the objective medical record or clinical findings. *Id*. at 30; *see Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"); *Tonapetyan*, 242 F.3d at 1149 (rejecting physician's opinion, in part, due to a lack of objective evidence to support it). Here, as discussed above, Dr. Osman's treatment notes contain no

---

[8]    In a treatment note dated just six days prior to the first letter opinion, Dr. Osman wrote plaintiff had 12 surgeries on his face. AR at 351.

objective findings. *See* AR at 350-51. And plaintiff's other physicians all reported normal mental status examination findings, including that plaintiff was alert, oriented, cooperative, and with appropriate affect. *See, e.g., id*. at 404, 408, 687, 729, 731, 785.

Accordingly, the ALJ provided three specific and legitimate reasons supported by substantial evidence for rejecting Dr. Osman's opinions.

As for Dr. Haroun's and Dr. Davis's opinions, the ALJ properly considered them and they could serve as substantial evidence. The opinions of a non-examining physician "may [] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Although Dr. Haroun and Dr. Davis only reviewed plaintiff's records from 2015, neither the 2015 nor subsequent records contained any objective, clinical findings supporting greater mental limitations. The 2015 treatment records only contained plaintiff's subjective complaints. Plaintiff failed to submit any psychiatric treatment notes from 2016 and 2017. His non-psychiatric treatment notes from 2016 and 2017 all contained normal mental status findings. *See, e.g.,* AR at 687, 785, 812, 836. Accordingly, Dr. Haroun's and Dr. Davis's opinions could serve as substantial evidence to reject Dr. Osman's opinions and support the ALJ's mental RFC determination.

### b. <u>Opinions Regarding Plaintiff's Physical RFC</u>

Similar to the mental RFC determination, plaintiff argues the ALJ failed to properly considered the treating physician's opinion regarding his physical RFC and the State Agency physicians' opinions did not serve as substantial evidence to support the physical RFC determination.

Dr. Kattih's opinion consisted solely of a disability finding. The ALJ properly gave no weight to his opinion because a disability finding is an issue

reserved for the Commissioner. *Id.* at 30; *see* 20 C.F.R. § 404.1527(d)(1).

Although the form opinion completed by Dr. Kattih provided him the opportunity

to indicate the underlying bases for his disability finding – e.g., the inability to lift

10 pounds frequently – Dr. Kattih did not specify the functional limitations

underlying his opinion. *See* AR at 834-35. Thus, the ALJ properly rejected Dr.

Kattih's opinion.[9]

In contrast to the psychiatric State Agency physicians, the opinions of Dr.

Niknia and Dr. Arnold could not serve as substantial evidence. The ALJ's physical

RFC determination was based on the State Agency physicians' opinions as well as

the ALJ's own determination that the evidence reflected plaintiff required postural

limitations and the ability to change positions. *Id.* at 30. Specifically, the ALJ

noted the State Agency physicians were able to review plaintiff's medical records

and his own statements, they were most familiar with Social Security requirements,

and their opinions were consistent with the record. *Id.* But Dr. Niknia and Dr.

Arnold only reviewed plaintiff's medical records through 2015. *See id.* at 80-83,

100-02. As the ALJ acknowledged, imaging subsequent to 2015 showed

improvement in a herniated disc but increased severity otherwise. *See id.* at 28;

*compare id.* 364-68 and 690, 829. Treatment notes subsequent to 2015 also reflect

plaintiff developed an antalgic gait, had positive single leg raise tests on the left,

and used a cane and back brace. *See, e.g., id.* at 662-63, 719-20, 785, 844. Based

on the additional records not reviewed by Dr. Niknia and Dr. Arnold, two

physicians recommended plaintiff undergo surgery. *See id.* at 720, 723. As such,

Dr. Niknia's and Dr. Arnold's opinions cannot serve as substantial evidence to

support the ALJ's physical RFC determination because they were not consistent

---

[9]   Dr. Kattih's opinion that plaintiff was disabled was distinct from his objective clinical findings. Although the ALJ properly rejected Dr. Kattih's disability opinion, he was still required to consider his underlying clinical findings in his RFC determination. The ALJ does not appear to have done so.

15

with the clinical findings or other evidence.

In sum, the ALJ properly considered Dr. Osman's, Dr. Kattih's, Dr. Haroun's, and Dr. Davis's opinions.[10] The ALJ provided specific and legitimate reasons for rejecting Dr. Osman's and Dr. Kattih's opinions, and her reasons for giving significant weight Dr. Haroun's and Dr. Davis's opinions were supported by the record. But because the record did not support Dr. Niknia's and Dr. Arnold's opinions, the ALJ improperly gave significant weight to their opinions, and consequently her physical RFC determination was not supported by substantial evidence.

**C.** **The ALJ Properly Discounted Plaintiff's Subjective Complaints**

Plaintiff contends the ALJ failed to properly consider his testimony. P. Mem. at 5. Specifically, plaintiff argues the ALJ's reasons for an adverse credibility finding were not clear and convincing and supported by substantial evidence. *Id.*

At the April 2017 hearing, plaintiff testified he made an unsuccessful attempt to work in 2014. AR at 54. He ultimately could not work as a waiter because he did not have the required lifting and carrying strength and was unable to handle the stress. *See id.* Plaintiff testified he lived alone but a friend helped him "quite a bit," including with lifting, groceries, laundry, driving, and cooking. *See id.* Plaintiff further testified he could only stand and walk for about 15 minutes at a time, used a cane, could only sit for about 30 minutes before needing to shift, could lift "maybe" six or seven pounds, and needed to lie down three to four times a day for about an hour each to control his back pain. *See id.* at 59-61.

Plaintiff also submitted a function report, dated November 6, 2015. *Id.* at 234-42. In the report, plaintiff stated he could feed his cat, prepare simple meals

---

[10] Neither Dr. Badr nor Dr. Chan provided an opinion of plaintiff's functional limitations.

such as cereal, and vacuum with a back brace, which was prescribed in April 2015. *See id*. at 235-36, 240. Plaintiff stated he only went out when necessary and only for about an hour at a time due to his physical limitations and anxiety. *See id*. at 237. Plaintiff reported difficulties with, among other things, lifting, standing, walking, sitting, and concentration. *See id*. at 239. Specifically, plaintiff reported he could walk about 10 blocks or 30 minutes before needing to rest and could pay attention for about an hour. *See id*. at 239, 241.

An ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 27. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting

plaintiff's testimony.[11]   The ALJ provided four reasons for discounting plaintiff's testimony: (1) his daily activities were inconsistent with the degree of limitations alleged; (2) inconsistent statements; (3) his delay in seeking treatment; and (4) his limitations were not supported by the medical evidence. *Id*. at 28.

The ALJ's first reason for discounting plaintiff's testimony was his daily activities indicated more functionality than he alleged. *Id*.; *see Valentine v. Astrue*, 574 F.3d 685, 693 (9th Cir. 2009) (the ALJ properly discounted plaintiff's credibility because his daily activities suggested his claims about the severity of his limitations were exaggerated); *Thomas*, 278 F.3d at 958-59 (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct).  The ALJ specifically found plaintiff could live independently without full time assistance, prepare meals, perform chores, run errands, and attend medical appointments.  *See* AR at 28.  None of the activities enumerated by the ALJ were inconsistent with plaintiff's testimony about his functional limitations.  Plaintiff stated he could only prepare simple meals such as cereal, often had a friend help with chores and could only perform the chores in stages, and only went out when necessary and for a short amount of time. *See id*. at 54, 236-37.  Moreover, "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant does not need to be "utterly incapacitated."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

---

[11]   Although the ALJ did not make an express finding of malingering, the decision suggests the ALJ believed plaintiff to be exaggerating his symptoms for the purpose of obtaining disability benefits. *See* AR at 28.  The ALJ noted plaintiff was only sporadically employed prior to the alleged onset of disability and continuously requested disability notes from his physicians without waiting to see if treatment would improve his symptoms. *See id*.

18

The ALJ's second reason for the adverse credibility finding – multiple inconsistent statements – was supported by substantial evidence. AR at 28; *see Bunnell*, 947 F.2d at 346 (an ALJ "may discredit the claimant's allegations based on inconsistencies"). The ALJ correctly noted plaintiff testified he had 20 procedures for his face, including to treat a punctured septum, but the records only indicated one procedure and no mention of a punctured septum. AR at 28; *see also id*. at 50-51, 332-33, 339-40, 563-64. The ALJ also correctly noted plaintiff made inconsistent statements regarding how he injured his back. Emergency room records reflect plaintiff injured his back in the shower in March 2015. *See* AR at 358, 361. But plaintiff reported to his social worker and in the Function Report that he injured his back in March 2015 when he fell or jumped after seeing a pit bull due to his PTSD. *See id*. at 234, 727. And during the hearing, plaintiff testified that he hurt his back when he slipped during the pit bull attack in November 2013. *See id.* at 57. Finally, the ALJ found plaintiff's testimony concerning the use of a cane was inconsistent with the record. This finding was not supported by substantial evidence since the record contains at least three references to plaintiff using a cane. *See id*. at 662, 723, 836. Notwithstanding the cane finding, the other inconsistencies were clear and convincing reasons to find plaintiff's testimony less credible.[12]

Third, the ALJ discounted plaintiff's testimony because he delayed seeking

---

[12] The record also contains other inconsistent statements not referenced by the ALJ. Plaintiff fractured his right wrist in May 2015 when he closed a door on his hand, yet he later stated he sustained the injury after a fall. *See* AR at 779, 812. Regarding his psychiatric treatment, in June 2016, plaintiff reported he was not receiving therapy, but in April 2017, Dr. Osman stated he had been treating plaintiff for the last three and a half years. *See id*. at 792, 861. As for his ability to socialize, Dr. Osman characterized plaintiff as a social isolate based on plaintiff's reports of social anxiety, but plaintiff told Dr. Kattih he was socially active. *See id*. at 842, 844, 846, 860.

19

treatment for his physical and mental conditions. *See id*. at 28. Regarding his back, the ALJ found that assuming plaintiff's testimony that he injured his back in November 2013 was true, he did not seek treatment for over a year. *See id*. As discussed above, plaintiff's testimony was inconsistent with the record, which plainly documented plaintiff timely seeking treatment after sustaining the back injury in March 2015. *See id*. at 358. Thus, the basis for the adverse credibility finding was the inconsistent statement rather than a failure to seek treatment. Similarly, the failure to seek immediate mental health treatment was not sufficient for an adverse credibility finding. Plaintiff contends he initially did not know his insurance covered psychiatric treatment, but sought it once he learned it was covered. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for an adverse crediblity finding unless was a good reason for not doing so). Moreover, PTSD does not necessarily manifest until well after the causal event. *See Savoie v. Astrue*, 2012 WL 3044134, at *4 (D. Or. Jul. 25, 2012) (citing *Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995)); *accord Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness."). The failure to seek immediate treatment was therefore not a clear and convincing reason to find plaintiff's testimony less credible.

Finally, the ALJ cited lack of objective medical support as a basis for finding plaintiff's testimony less credible. *See* AR at 28-29. Specifically, the ALJ noted although plaintiff had multi-level degenerative disc disease with annular tears, disc extrusion, and foraminal narrowing; a herniated disc; mild denervation; and osteopenia, plaintiff exhibited a normal gait, normal range of motion in his extremities, and full motor strength in 2015. *See id.* The ALJ also acknowledged the positive straight leg raise test, decreased range of motion, limping gait, physical

therapy, and epidural injections, but nonetheless found they were inconsistent with plaintiff's alleged limitations. *See id*. Contrary to the ALJ's determination, there was objective evidence to support plaintiff's complaints.

In all, the ALJ cited one clear and convincing reason for her adverse credibility finding – plaintiff's inconsistent statements. The remaining reasons were not supported by substantial evidence. But given the numerous inconsistent statements, this reason was sufficient by itself to support the ALJ's discounting of plaintiff's testimony.

**D.    The ALJ Did Not Err at Step Three**

Plaintiff contends the ALJ erred at step three. P. Mem. at 3-5, 7. Plaintiff argues he met or equaled any of the following: Listings 5.08, 12.04, 12.06, 12.13, 12.15, an unspecified neurological disorder Listing, and an unspecified musculskeletal system disorder Listing.

At step three, Social Security regulations provide that a claimant is disabled if he or she meets or medically equals a listed impairment set forth in the Listings. 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings . . . we will find that you are disabled."); 20 C.F.R. § 404.1520(d), ("If you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience."). In other words, if a claimant meets or equals a Listing, he or she will be found disabled at this step "without further inquiry." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). In such case, there is no need for the ALJ to complete steps four and five of the sequential process. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099. To establish that an impairment is medically equivalent to a

listed impairment, it is the claimant's burden to show his impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). For an impairment or combination of impairments to equal a Listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990), *superseded by statute on other grounds as stated in Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); *see* 20 C.F.R. § 404.1526(a)-(b). A determination of medical equivalence must rest on objective medical evidence. *See Lewis*, 236 F.3d at 514 ("A finding of equivalence must be based on medical evidence only."). "If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Commissioner] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. § 404.1526(b)(2).

Plaintiff fails to meet his burden at step three. With regard to neurological and musculoskeletal system disorders, plaintiff fails to identify any Listing he believes he met or equaled. As for the mental disorders, plaintiff simply lists several Listings which tangentially pertain to him. In each of these instances, plaintiff fails to identify the criteria for each Listing he is alleged to meet or equal, and explain how his medical findings met or equaled the criteria. Consequently, plaintiff's claims that he met or equaled a neurological, musculoskeletal system, or mental disorders Listing are conclusory and fail to meet his burden.

As for Listing 5.08, contrary to plaintiff's assertions, he failed to prove the ALJ erred. To meet Listing 5.08 – weight loss due to any digestive disorder – plaintiff must show that "despite continuing treatment as prescribed, [he had a] BMI of less than 17.5 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." Listing 5.08. The records show plaintiff

had a BMI of 17.19 on June 23, 2016 and October 11, 2016, thereby satisfying one criterion. *See* AR at 762, 780. But the record does not show the weight loss was caused by a digestive disorder or that plaintiff was receiving treatment for his weight during this period. Contrary to plaintiff's contention, a one-time diagnosis for diarrhea in October 2016 did not establish he had a digestive disorder that caused the weight loss. *See id*. at 764. Consequently, plaintiff has failed to show he met or equaled Listing 5.08.

Plaintiff also argues the ALJ should have retained a medical expert to testify on this issue. P. Mem. at 7. An ALJ only has the duty to retain an expert when the evidence was ambiguous. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The record was not ambiguous here.

In short, the ALJ did not err at step three.

**E.      The ALJ Did Not Err at Step Five**

Plaintiff argues the ALJ erred at step five. P. Mem. at 5. Specifically, plaintiff contends he cannot perform the jobs of house cleaner, marker, table worker, addresser, or stuffer, and the vocational expert's numbers were wrong. *Id*.

As discussed above, the ALJ's physical RFC determination was not supported by substantial evidence. Therefore, the ALJ must make a new RFC determination and again proceed through steps four and five. Assuming the ALJ reaches the same RFC determination after reconsidering all of the objective medical evidence, however, the ALJ's step five finding was supported by substantial evidence.

At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other gainful activity. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant

can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 404.1512(f).

The Commissioner may meet his step five burden either by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, Subpart P, Appendix 2 or by relying on the testimony of a vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT") "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); SSR 83-12; *see also* 20 C.F.R. § 404.1566(d)(1) (DOT is a source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (discussing SSR 00-4p). In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (*quoting Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (as amended).

The ALJ here, at step five, relied on the testimony of the vocational expert to determine whether plaintiff, given his RFC, could perform other jobs that exist in significant numbers in the national economy. *See* AR at 62-69. In response to a hypothetical limiting plaintiff to sedentary work but otherwise the same limitations as in the RFC determination, the VE testified plaintiff could do the jobs of addresser, stuffer, and table worker. *See id*. at 65. In response to hypothetical with

the ALJ's RFC determination, the VE testified plaintiff could perform the jobs of cleaner, housekeeping and marker. *See id*. at 68. Accordingly, the ALJ found plaintiff could perform the occupations of addresser, stuffer, table worker, housekeeping cleaner, and marker. *See id*. at 33; *see also* 20 C.F.R. § 404.1567(b) (a person who can do light work can generally also do sedentary work).

Accordingly, the step five finding was supported substantial evidence, and the ALJ did not err.

## F.    The ALJ Failed to Develop the Record

Plaintiff argues the ALJ failed to develop the record. P. Mem. at 6, 8. Plaintiff contends the ALJ should have retained a consultative examiner and obtained additional records. *Id*.

When the record is ambiguous, the Commissioner has a duty to develop the record. *See Webb*, 433 F.3d at 687; *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."). This may include retaining a medical expert or ordering a consultative examination. 20 C.F.R. § 404.1519a(a). The Commissioner may order a consultative examination when trying to resolve an inconsistency in evidence or when the evidence is insufficient to make a determination. 20 C.F.R. § 404.1519a(b).

Here, the ALJ had a duty to retain a consultative examiner or medical expert because the record was ambiguous. As discussed above, the State Agency physicians only reviewed plaintiff's medical records from 2013-2015. But as the ALJ recognized, plaintiff's back impairment appeared to increase in severity after

2015. Moreover, two physicians recommended plaintiff obtain surgery to treat his back pain. Given the post-2015 records suggesting increased severity, the surgery recommendations, and the lack of an opinion based on a review of the entire record, the record was ambiguous as to plaintiff's physical limitations. The ALJ therefore failed to fulfill her duty to develop the record.

## G.    The ALJ Properly Considered a Lay Opinion

Plaintiff contends the ALJ failed to properly consider the November 2015 Vocational Evaluation Report. P. Mem. at 6-7; *see* AR at 591-99.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R. § 404.1513(d)(3) (the Commissioner will consider evidence from other sources, including social welfare agency personnel). The ALJ may only discount the testimony of lay witnesses if he provides specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see Lewis*, 236 F.3d at 511 ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing so.").

Jose DeLaCruz of Disability and Assessment Services drafted the Vocational Evaluation Report. AR at 591-99. The California Department of Rehabilitation had referred plaintiff to Disability and Assessment Services for ten days of vocational evaluation. Plaintiff reported pain in his lower back, shoulder, and cervical region. As such, DeLaCruz opined plaintiff required breaks as needed to reposition himself and should avoid heavy lifting and standing. *Id*. at 598. DeLaCruz stated despite providing accommodations, including a lumbar supported

chair, breaks as needed, and an abbreviated schedule, plaintiff had difficultly with consistent attendance and sustained stamina to complete the evaluation. *Id*. at 599. During the evaluation, plaintiff was cooperative with the staff but annoyed with peers, did not have the stamina to complete 2.5 hours of continuous work, and was unable to adhere to a structured activity for more than four hours. *Id*. Plaintiff also reported he was unable to work in a career that did not involve working in the artistic industry. *Id*. Consequently, DeLaCruz opined plaintiff was not ready for competitive employment at the time. *Id*.

The ALJ rejected most of DeLaCruz's findings because they had no direct correlation to the standards used in the social security disability setting. *See* AR at 30. The ALJ also rejected the medical findings and physical limitations on the basis that DeLaCruz was not a medical professional. *See id.* Nevertheless, the ALJ considered plaintiff's aptitude findings, which indicated had mostly above average or average cognitive skills, and the fact that he canceled several sessions. *See id*. at 30-31.

The ALJ properly provided germane reasons for rejecting DeLaCruz's conclusions. While lay testimony "as to a claimant's *symptoms* is competent evidence which the Secretary must take into account," "medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." *Nguyen*, 100 F.3d at 1467. Thus, the ALJ properly rejected DeLaCruz's findings to the extent they were opinions as to his limitations. The ALJ also properly rejected DeLaCruz's opinion that plaintiff was not ready for competitive employment since the ultimate social security disability determination was within the purview of the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Finally, the ALJ clearly considered DeLaCruz's objective findings such as the aptitude findings but properly rejected his opinion that plaintiff had a lack of stamina. AR at 30-31. The ALJ noted plaintiff failed to regularly attend the vocational

evaluation, yet a lack of stamina had never caused plaintiff to have to miss a medical appointment.   This called into question the effort plaintiff was providing.

Accordingly, the ALJ's reasons for rejecting DeLaCruz's opinion were germane

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there are outstanding issues to be resolved and remand is required.  On remand, the ALJ shall reconsider the State Agency physicians' opined physical

limitations, and either credit those opinions or provide specific and legitimate reasons supported by substantial evidence for rejecting them.  The ALJ shall also retain a consultative examiner or medical expert, and either credit his or her opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it.  The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 30, 2019

SHERI PYM
United States Magistrate Judge